UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| STURGIS MOTORCYCLE<br>     RALLY, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>KENTON D. MORTIMER, *et al.*<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. ___2:14-cv-175-WCO___ |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

The stated mission of Plaintiff, Sturgis Motorcycle Rally, Inc., is twofold: to promote and enhance economic development in the City of Sturgis and surrounding Black Hills region of South Dakota and eastern Wyoming, by, *inter alia*, protecting and enforcing the valuable intellectual property rights pertaining to the Sturgis Motorcycle Rally™ event, and to provide a tangible and charitable return to the citizens of Sturgis and the surrounding community. Defendants, in spite of constructive and actual notice of Plaintiff's rights in a wide range of STURGIS-formative marks, have attempted to frustrate Plaintiff's mission by selling infringing goods rather than purchase for resale licensed merchandise from

Plaintiff and its licensees. As set forth below, Plaintiff has a substantial likelihood of success on the merits; irreparable injury will result unless the injunction issues; the threatened injury to the movant outweighs whatever harm an injunction may cause to Defendants; and the injunction would not be adverse to the public interest but in fact would enhance it by protecting the public's right not to be confused.

## I.   FACTS

1.     Since 1938, Plaintiff and its predecessors-in-interest have organized, sponsored, marketed and promoted an annual motorcycle rally known in recent decades as the "Sturgis Motorcycle Rally" which takes place annually in and near the city of Sturgis, South Dakota and the Black Hills area of South Dakota and Wyoming and is attended by approximately half a million people each year. [Exh. A, Declaration of Dean Kinney, hereinafter "Kinney", ¶6].

2.     Plaintiff, together with its licensee, the City of Sturgis, South Dakota, have been the official organizers and sponsors of the Sturgis Motorcycle Rally™ event for many years. A principal purpose of this annual event is to promote economic development in the area. [Kinney, ¶7].

3.     The Sturgis Motorcycle Rally™ event, officially beginning the first Monday after the first full weekend each August, is the premier motorcycle-related event in the world, being the most famous and best attended. [Kinney, ¶8].

4.      As a result of the fame of the Sturgis Motorcycle Rally™ event and the

hundreds of thousands of visitors who attend the event each year, the event has

become a destination for some of the country's best-known musical groups and

entertainers, celebrities and even Presidential candidates. [Kinney, ¶9].

5.      The Sturgis Motorcycle Rally™ event has had several names over the years,

including "Black Hills Motor Classic" from about 1938, to the "Sturgis Rally &

Races" in or about 1992, and currently it is most commonly referred to as the

"Sturgis Motorcycle Rally" and the nickname, "Sturgis." [Kinney, ¶10].

**A.      Plaintiff's Valuable Trademarks and Service Marks**

6.      In promoting and otherwise supporting the Sturgis Motorcycle Rally™

event, Plaintiff has used, and permitted others to use, certain proprietary

trademarks and service marks to identify the activities comprising this annual event

and the goods sold therewith. Those proprietary designations have included,

among others, the marks STURGIS BIKE WEEK®, STURGIS™, STURGIS

MOTORCYCLE RALLY™, STURGIS RALLY & RACES™, TAKE THE RIDE

TO STURGIS®, and a composite design mark which includes as the largest and

most prominent component thereof the term STURGIS (the "STURGIS Composite

Design Mark") (collectively, the "STURGIS Marks"). [Kinney, ¶11].

7.      The success of the Sturgis Motorcycle Rally™ event is due in large part to

the longstanding, continuous and extensive sponsorship, promotion and support by

Plaintiff and its predecessors-in-interest, including the Sturgis Area Chamber of

Commerce (the "Sturgis Chamber"), with respect to the offering, sale and

distribution of goods and services related to the event and sold under and in

conjunction with the STURGIS Marks, and due to the related activities of Plaintiff,

and its licensee, the City of Sturgis, through sponsorship activities, which benefits

are returned to the local community through charitable donations. [Kinney, ¶12].

8.      As the exclusive licensee of Plaintiff for sponsorship and related services,

the City of Sturgis not only sells sponsorships for the Sturgis Motorcycle Rally™

event, but it also expends a great deal of its own resources supporting the event

each year in the form of sanitation and security services, and in the advertisement

and promotion of the event through the City's "Rally Department". [Kinney, ¶13].

9.      The full-time "Rally Department" plans for and obtains sponsorships for the

annual rally and expends nearly $50,000 annually for publishing and city

promotion related to the Sturgis Motorcycle Rally™ event. [Kinney, ¶14].

10.     The City of Sturgis utilizes revenues from the sale of sponsorships to

underwrite the tremendous costs associated with organizing and managing the

Sturgis Motorcycle Rally™ and the hundreds of thousands of bikers and tourists

who populate the 6,000-resident city each Summer. Such costs include those

4

pertaining to police protection, traffic control, sanitation, code enforcement, and hospitality [Kinney, ¶15], and amounted to nearly $870,000 in 2013 [Exh. B, Declaration of Charles Landrum, hereinafter "Landrum", ¶5; Exh. B-12 thereto].

11.    By virtue of the City of Sturgis being the exclusive sponsorship licensee of Plaintiff and the City's endorsement of Plaintiff's ownership, protection, and enforcement of the STURGIS Marks, the City of Sturgis supports and enhances the distinctiveness of the STURGIS Marks with Plaintiff. [Kinney, ¶16].

12.    The Sturgis City Council in 2013 passed Resolution 2013-42 affirming Plaintiff's rightful place as the exclusive owner of the STURGIS Marks and promoter of the rally, in which the City Council unanimously declared its "support of Sturgis Motorcycle Rally, Inc. in their efforts to protect and preserve the intelelctual [sic] property of the Sturgis Motorcycle Rally™ on behalf of the greater Sturgis area and its residents." [Landrum, ¶6; Exh. A to Complaint].

13.    Plaintiff and its licensees have marketed, advertised, and promoted extensively the Sturgis Motorcycle Rally™ event and their goods and services nationwide for many years using the STURGIS Marks, including by producing the Official Rally Guide, managing the official Sturgis Motorcycle Rally™ event website at <www.sturgismotorcyclerally.com> and maintaining the official social media presence such as on Facebook®, exhibiting at other motorcycling events

5

across the country to promote the Sturgis Motorcycle Rally™ event and tourism in the Black Hills area, and by serving as a conduit for the State of South Dakota Department of Tourism pertaining to the event. [Kinney, ¶17].

14. Plaintiff and its predecessors have advertised the exclusive sponsorship and promotion of the Sturgis Motorcycle Rally™ event since at least 1986. Sponsors of the Sturgis Motorcycle Rally™ event have included Harley-Davidson, Ford Motor Co., Dodge, GEICO, and Jack Daniel's. [Kinney, ¶18].

15. Such use has occurred not only through use of Plaintiff's registered marks, STURGIS BIKE WEEK®, TAKE THE RIDE TO STURGIS®, and the STURGIS Composite Design Mark, but also by using and permitting others to use the STURGIS Marks on or in connection with Sturgis Motorcycle Rally™ event-related goods and services. [Kinney, ¶19].

16. Plaintiff vigorously protects the STURGIS Marks by monitoring the marketplace for infringing goods and vigorously enforces its rights against those infringing the STURGIS Marks. As a result of this monitoring, Plaintiff has enhanced the goodwill and strength in the STURGIS Marks. [Kinney, ¶20].

17. Plaintiff and its licensees have sold a tremendous amount of goods and services under the STURGIS Marks: over $70 million since 1993 covering a wide variety of STURGIS-branded goods and services. Such sales have produced in

6

excess of $4 million in royalties to Plaintiff and its predecessors-in-interest,

including royalties totaling over half-a-million dollars since 1993 from the sale of

official sponsorships by the City of Sturgis. [Kinney, ¶¶21–22].

18.     Further strengthening the STURGIS Marks to connote and promote

Plaintiff's goods and services, Plaintiff and its predecessors have obtained and/or

acquired, and Plaintiff owns, a number of U.S. registrations for several of the

STURGIS Marks. These registrations provide nationwide notice to others of the

rights of Plaintiff and further strengthen the Sturgis Motorcycle Rally™ event and

the goodwill of Plaintiff associated with the STURGIS Marks, including:

- STURGIS BIKE WEEK®, U.S. Reg. Nos. 2,070,955, 3,818,703, 3,825,398, 3,838,171, 3,911,270, and 3,923,236, for use in connection with a wide variety of merchandise, including clothing, namely, shirts, T-shirts, sweatshirts, bandanas and caps and including embroidered clothing, namely shirts and sweatshirts;

- TAKE THE RIDE TO STURGIS®, U.S. Reg. No. 2,698,677, for use in connection with clothing, namely, t-shirts and sweatshirts and caps; and,

- The STURGIS Composite Design Mark, U.S. Reg. No. 1,948,097, for use in connection with, *inter alia*, "promoting sports competitions and/or events of others, namely motorcycle rallies, exhibits and competitions" (shown here):



(hereinafter, the "STURGIS Registrations"). [Kinney, ¶23; Landrum, Exhs. B-1

through B-8; see also Exh. B to Complaint].

7

19.     With respect to the '097 Registration, '677 Registration and the '955 Registration, SMRi and its predecessors have filed the requisite Section 15 affidavit rendering the marks incontestable pursuant to 15 U.S.C. § 1065. [Landrum, Exhs. B-9 through B-11].

20.     The federally registered STURGIS Composite Design Mark has been used continuously since 1986 by SMRi and its predecessor the Sturgis Chamber and by others acting under authority of SMRi. [Kinney, ¶24].

21.     The incontestable STURGIS Composite Design Mark often is referred to by SMRi, by members of the Sturgis community, and by the thousands of motorcycle enthusiasts who attend the annual Sturgis Motorcycle Rally™ event, as the "STURGIS Logo" or the "Official STURGIS Logo." [Kinney, ¶25].

22.     The STURGIS Composite Design mark has as its most prominent feature the word STURGIS, in bold, capital letters at the center of the mark and in larger type than the other features of the mark. [Kinney, ¶26; see paragraph 18 above].

23.     As a result of the longstanding continuous advertising and use of the STURGIS Marks, those designations have a distinctive quality and have acquired special significance and very valuable goodwill as identifying the annual event and SMRi, so that when members of the public see the STURGIS Marks, they automatically think of the annual event and/or its promoter, SMRi, and/or its

8

exclusive sponsorship licensee, the City of Sturgis. [Kinney, ¶27].

24.     Consumers understand that the official sponsor of the Sturgis Motorcycle Rally™ event is SMRi and/or its licensee, the City of Sturgis. [Id.].

25.     Thus, the STURGIS Marks are linked in the minds of consumers with SMRi, as the official sponsor of the STURGIS Motorcycle Rally™ event, and its licensee, the City of Sturgis. [Kinney, ¶28].

26.     For decades SMRi and its predecessor the Sturgis Chamber have used and/or permitted others to use, as licensees or sponsors, the proprietary STURGIS Marks in conjunction with SMRi's promotion and management of the annual event, including all of its related activities. [Kinney, ¶29].

27.     Such use has occurred not only through use of the registered STURGIS Composite Design Mark, but also by using and permitting others to use the STURGIS Marks on or in connection with STURGIS Motorcycle Rally™-related goods and services. [Kinney, ¶30].

**B.     Plaintiff's Charitable Activities and Valuable Goodwill
        in the STURGIS Marks**

28.     Plaintiff's stated mission is twofold: to promote and enhance economic development in the City of Sturgis and surrounding Black Hills region of South Dakota and eastern Wyoming, by, *inter alia*, protecting and enforcing the valuable intellectual property rights pertaining to the Sturgis Motorcycle Rally™ event, and

to provide a tangible and charitable return to the citizens of Sturgis and the surrounding community. [Kinney, ¶31].

29.     As a result of royalties generated from the sale of licensed goods and sponsorships of the Sturgis Motorcycle Rally™ event, Plaintiff and its predecessors have made substantial contributions to the betterment of the Sturgis community, including charitable contributions to over 90 different organizations, out of licensing and sponsorship-royalty revenues. [Kinney, ¶32].

30.     Among the many groups that have received contributions from SMRi are the Meade County summer school program, Salvation Army's food cupboard, Sturgis Arts Council, Sturgis Jaycees, Sturgis Little League, Sturgis Police Department D.A.R.E. program, Sturgis Volunteer Fire Department, Black Hills Area Habitat for Humanity, Crisis Intervention Shelter, special projects of the City of Sturgis, and Girl Scouts of the USA. From 2010 through 2013 alone, SMRi contributed more than $250,000 to Sturgis-area charities. [Kinney, ¶33].

31.     These activities have engendered a great deal of goodwill for Plaintiff, its predecessors, their respective sponsorship and promotion of the Sturgis Motorcycle Rally™ event and for the STURGIS Marks. [Kinney, ¶34].

**C.     Defendants and Their Illegal Activities**

32.     Without authorization, license or consent from Plaintiff [Kinney, ¶38], the

Defendants have been using reproductions, copies, and colorable imitations of Plaintiff's registered STURGIS Marks, including the infringing designation STURGIS RALLY WEEK, in connection with the sale, offering for sale, distribution and advertising of the Defendants' goods, and in a manner which is likely to cause confusion, to cause mistake and to deceive consumers and potential consumers. [Landrum, ¶7; Exh. E to Complaint; Declaration of Jason M. Sneed, hereinafter "Sneed", ¶4; Exh. F to Complaint (examples of infringing goods)].

33.    On June 20, 2000, Mortimer, doing business as Renegade Classics, voluntarily executed a "Sturgis Motorcycle Rally License Application" and paid an accompanying $50.00 fee. [Kinney, ¶35; Exhs. C and D to Complaint].

34.    The application contained the following acknowledgment of the rights of Plaintiff's predecessor-in-interest, the Sturgis Chamber, with the "X" handwritten by Mortimer to indicate for which of Plaintiff's marks Mortimer was applying for a license:

*You are applying for a license to use the (X) STURGIS, ( ) STURGIS RALLY & RACES, ( ) BLACK HILLS RALLY & RACES, ( ) BLACK HILLS MOTOR CLASSIC LOGO® trademark(s) (hereinafter referred to as the "Marks"). By submitting this application and in consideration of Champion Rally Productions' ("CRP") consideration of the application, Applicant acknowledges that the Marks are exclusively owned by the Sturgis Area Chamber of Commerce when used on or in connection with the manufacture, marketing and/or distribution of Rally related merchandise and/or services.*

[Kinney, ¶36; Exh. C to Complaint].

35.     The Sturgis Chamber's then-agent for licensing the STURGIS Marks, Champion Rally Productions, evaluated Mortimer's application. However, Mortimer did not consummate a license with the Chamber. [Kinney, ¶37].

36.     At no time has Plaintiff or its predecessors-in-interest granted to any of Defendants a license to use Plaintiff's STURGIS Marks. [Kinney, ¶38].

37.     On August 9, 2011, Plaintiff, through counsel, had delivered to Mortimer and Mortimer Enterprises a letter demanding that Defendants cease their offering for sale and sale of goods infringing Plaintiff's STURGIS Marks and giving actual notice to Mortimer and Mortimer Enterprise of Plaintiff's rights and Defendants' wrongful conduct. [Exh. C-1 to Sneed].

38.     Thereafter, Plaintiff understands and believes that Mortimer and Mortimer Enterprises purchased from Plaintiff's licensee licensed goods for resale and ceased the sale of infringing goods. [Kinney, ¶39].

39.     However, Defendants now have offered for sale, and have sold infringing goods within the State of Georgia, [Landrum, ¶7; Exh. E to Complaint], and in the State of South Dakota, [Sneed, ¶4; Exh. F to Complaint].

## II.     ARGUMENT

The legal standard for a preliminary injunction is straightforward:

*A district court may issue a preliminary injunction where the moving party demonstrates (1) a substantial likelihood of success on the merits; (2) that*

*irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.*

*Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

## A.    Plaintiff is Likely to Succeed on the Merits

"To prevail in an action for trademark infringement under the Lanham Act, 'the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion.' " *Churchill Downs Inc. v. Commemorative Derby Promotions, Inc.*, 1:12-CV-0517-JEC, 2013 WL 5350830 (N.D. Ga. Sept. 23, 2013) (quoting *Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989); citing 15 U.S.C. § 1114(1)(a)).

### 1.    Plaintiff's Trademarks are Valid

Pursuant to 15 U.S.C. § 1115(a), "[t]rademarks registered with the United States Patent and Trademark Office are presumptively valid." *Churchill Downs*, 2013 WL 5350830, at *4. Common-law trademarks also are entitled to protection:

*Validity is not limited to registered trademarks, however, and the use of another's unregistered,* i.e.*, common law, trademark can constitute a violation of § 43(a) of the Lanham Act.*

*Id.* (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir. 1984)).

"To have a right in an unregistered mark, the mark must be sufficiently distinctive

13

of the proprietor's goods or services." *Churchill Downs*, 2013 WL 5350830, at *4

(citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

Here, Plaintiff asserts six marks. [Complaint, ¶16]. Three of the marks are

registered with the U.S. Patent & Trademark Office ("PTO") and are incontestable

pursuant to 15 U.S.C. § 1065: STURGIS BIKE WEEK®, TAKE THE RIDE TO

STURGIS®, and the STURGIS Composite Design Mark. [Exhs. B-1 through B-8

to Landrum Decl., showing current Trademark Status Reports; Exhs. B-9 through

B-11, showing incontestability of registrations]. Plaintiff's trademark registrations

show conclusively the validity of the registered mark and of the registration of the

mark, of Plaintiff's ownership of the mark, and of Plaintiff's exclusive right to use

the registered mark in commerce. 15 U.S.C. § 1115(b). Therefore, Plaintiff has

demonstrated a likelihood of success as to owning a valid and protectable mark.

Plaintiff also asserts common-law rights in three trademarks and service

marks used extensively in commerce by Plaintiff and its licensees: STURGIS™,

STURGIS MOTORCYCLE RALLY™, and STURGIS RALLY & RACES™.

Defendants already have acknowledged the distinctiveness of Plaintiff's rights in

the common-law marks. Specifically, Mortimer in 2000 executed on behalf of

Mortimer Enterprises, a California corporation d/b/a Renegade Classics, a "Sturgis

Motorcycle Rally License Application" as follows:

14

> *You are applying for a license to use the (X) STURGIS, ( ) STURGIS RALLY & RACES, ( ) BLACK HILLS RALLY & RACES, ( ) BLACK HILLS MOTOR CLASSIC LOGO® trademark(s) (hereinafter referred to as the "Marks"). By submitting this application and in consideration of Champion Rally Productions' ("CRP") consideration of the application, **Applicant acknowledges that the Marks are exclusively owned by the Sturgis Area Chamber of Commerce** when used on or in connection with the manufacture, marketing and/or distribution of Rally related merchandise and/or services.*

[Exh. C to Complaint (emphasis added)]. Mortimer thus acknowledged Plaintiff's rights—received in 2010 by Plaintiff via assignment from Plaintiff's predecessor-in-interest the Sturgis Chamber—specifically including the STURGIS™ mark, the STURGIS RALLY & RACES™ mark and the registered STURGIS Composite Logo. Having acknowledged Plaintiff's STURGIS™ mark, Mortimer also implicitly acknowledged Plaintiff's ownership of the STURGIS MOTORCYCLE RALLY™ mark. Mortimer, on his own products, recognizes Plaintiff's STURGIS™ mark and the Sturgis Motorcycle Rally™ event as "World Famous". [Exh. E to Complaint, Example 2, ECF p.3]. Rowsey and Rowsey Investments, by taking ownership via assignment of the "Renegade Classics" brand, bound themselves to the acknowledgements made by Mortimer. Johnson and White-Johnson sell goods purchased from or at the direction of the other Defendants.

## 2.    There is a Likelihood of Confusion from Defendants' Acts

The likelihood of confusion "may be of two sorts". *Churchill Downs*, 2013

15

WL 5350830, at *6 (citing *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546 (11th Cir. 1985)). "It may be consumer confusion as to whether defendants' products were made by plaintiff, known as 'confusion of goods.' It may also be confusion as to whether plaintiff 'produces, licenses, or otherwise endorses' defendants' goods, known as the 'promotional goods' doctrine." *Churchill Downs*, 2013 WL 5350830, at *6 (internal citations omitted). In either case, the Eleventh Circuit enunciates the likelihood of confusion test as having seven factors:

> *(1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public.*

*Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360-61 (11th Cir. 2007) (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984); other citations omitted). Courts must consider all seven factors, *Welding Servs.*, 509 F.3d at 1361 (citation omitted), but depending on the facts, some factors might be relatively "insignificant under the circumstances." *Univ. of Georgia*, 756 F.2d at 1542.

### a)      Plaintiff's STURGIS Marks are highly distinctive.

"Distinctiveness is a function of how strongly consumers identify the mark with its owner's products or services." *Churchill Downs*, 2013 WL 5350830, at *6

16

(citing *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 (11th Cir. 1983)). "Highly distinctive marks are more likely to give rise to confusion than are less distinctive marks, and are thus granted greater protection." *Churchill Downs*, 2013 WL 5350830, at *6 (citing *Jellibeans, Inc.*, 716 F.2d at 840). Courts assess distinctiveness through the following criteria: "(1) the type of mark; (2) the amount of use of the term by others in the same product and geographical area; and (3) the extent of a mark's use, taking into consideration the amount of advertising and promotion done under the mark." *Churchill Downs*, 2013 WL 5350830, at *6.

Plaintiff's STURGIS Marks, including STURGIS BIKE WEEK®, STURGIS™, STURGIS MOTORCYCLE RALLY™, STURGIS RALLY & RACES™, TAKE THE RIDE TO STURGIS®, and the STURGIS Composite Design Mark, are highly distinctive, indeed "World Famous" as admitted by Defendants on their infringing goods. [Exh. E to Complaint, Example 2]. Plaintiff has received nearly $4 million in royalties, including from the sale of over $70 million of goods and services under the STURGIS Marks over several decades. Plaintiff's licensee, the City of Sturgis, expends hundreds of thousands of dollars annually in support of the Sturgis Motorcycle Rally™ event, and employs a full-time "Rally Department" for obtaining sponsorships. Plaintiff's STURGIS Marks are highly distinctive and generate enormous goodwill for Plaintiff.

17

**b)** **Defendants' infringing marks are identical to or substantially similar to Plaintiff's STURGIS Marks.**

"A factor increasing the likelihood of confusion is a high degree of similarity of the marks at issue; **the more similar the marks, 'the more likely reasonable consumers will mistake the source of the product that each mark represents.'** " *Bogart, LLC v. Ashley Furniture Indus., Inc.*, 2012 WL 3745833 (M.D. Ga. Aug. 28, 2012) (emphasis added; quoting *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1337 (11th Cir. 1999)). The "court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Id.*

Here, Defendants on their goods use the infringing designation STURGIS RALLY WEEK. [Exh. E to Complaint, Examples 1, 2, and 4; Exh. F, Example 7].[1] The designation consists of three words—"Sturgis", "Rally", and "Week"—the first and last being identical to Plaintiff's STURGIS BIKE WEEK® mark and the second, "Rally", being a reference to a motorcycle-related event. Likewise, the second word of Plaintiff's mark, "Bike", is a nickname for a motorcycle. And there is only one week-long "rally" in or around the City of Sturgis: Plaintiff's Sturgis Motorcycle Rally™ event. The two marks are nearly identical in sound and

---

[1] Defendants also use the shortened form STURGIS RALLY. [See Exh. F to Complaint, Example 6].

appearance and create the same commercial impression.

Defendants also use the designation "Sturgis Motorcycle Rally". [Exh. E to Complaint, Example 3 (reverse)]. The designation consists of three words—"Sturgis", "Motorcycle", and "Rally"—each word identical to that in Plaintiff's common-law Sturgis Motorcycle Rally™ mark and the first and last words of which are identical to Plaintiff's STURGIS BIKE WEEK® mark. The second word, "Motorcycle" is a synonym for the second word of Plaintiff's mark, "Bike". These two marks likewise are identical or confusingly similar in sight and sound, and create the same commercial impression as Plaintiff's STURGIS Marks.

Defendants also use the designation "Sturgis," rendered as "Sturgis 2014". [Exh. E to Complaint, Examples 3 (obverse) and 5; Exh. F, Example 6 (reverse)]. The designation consists of a single word, "Sturgis", and the date "2014". The word is identical to Plaintiff's STURGIS™ mark, the first word of the STURGIS BIKE WEEK® mark, the last word of the TAKE THE RIDE TO STURGIS® mark, and the most prominent component of the STURGIS Composite Design Mark. "2014" is a reference to the August 2014 Sturgis Motorcycle Rally™ event.

Each of the examples of Defendants' infringing goods include marks identical or substantially similar to Plaintiff's STURGIS Marks, accompanied by graphical elements pertaining to motorcycles such as helmets, goggles, tires, and

19

pistons. Still further Defendants' infringing goods use the terms "74th Anniversary" and/or the date 2014, referring to the Sturgis Motorcycle Rally™ generally and to the rally occurring during August 2014 specifically. [Exhs. E and F to Complaint]. Therefore, this factor "strongly favors" Plaintiff. *Frehling*, 192 F.3d at 1337.

      **c)**     **The goods offered under the parties' marks are identical.**

Plaintiff and its licensees sell Class 25 goods, including t-shirts, as set forth in the '955 and '398 Registrations for STURGIS BIKE WEEK® and the '677 Registration for TAKE THE RIDE TO STURGIS®. Plaintiff's other marks also are used extensively in conjunction with the sale of t-shirts. Defendants' infringing goods are t-shirts. [Exhs. E and F to Complaint]. Moreover, Mortimer admits on his website that "T-shirts are the #1 souvenir at the rally." [Landrum, ¶8; Exh. G to Complaint]. Thus, the goods sold are identical. This factor strongly favors Plaintiff.

      **d)**     **The parties use identical sales methods, including their sales outlets and customer base.**

The relevant consumers include motorcycle enthusiasts and tourists, persons engaged in unsophisticated, small transactions and thus are more likely to be confused as to the source of goods. See, *e.g.*, *Welding Servs.*, 509 F.3d at 1361 (purchasers of technical and large-scale services are "less likely to be confused than casual purchasers of small items"). Plaintiff and its licensees offer their goods through retail outlets, with a large proportion of sales occurring at and leading up

to the Sturgis Motorcycle Rally™ event. [Kinney, ¶40]. Defendants sell their goods through identical outlets, such as the Buford, Georgia retail store operated by Johnson and White-Johnson and at "four locations on Main Street" in the City of Sturgis. [Exh. G to Complaint]. The parties seek to sell their respective goods to the same customer base, namely motorcycle enthusiasts and tourists generally and attendees of the Sturgis Motorcycle Rally™ event specifically. [Kinney, ¶41]. In light of the casual nature of t-shirt purchases, this factor strongly favors Plaintiff.

### e)    The parties engage in substantially similar advertising.

Plaintiff and its licensees promote their goods branded with the STURGIS Marks through websites, social media, and signage at retail locations. [Kinney, ¶42]. For example, at Plaintiff's <sturgismotorcyclerally.com> website, Plaintiff promotes "Events", "Rally Info", "Lodging & Visitor Info", and "Shopping", including links for to Plaintiff's licensees such as Tom's Ts. [Landrum, Exh. B-15]. At Defendants' <sturgisfun.com> website, Defendants likewise promote "Rally Info", "Rides & Maps", "Campgrounds", "Bars", and "Shopping", including links to infringing goods. [Landrum, Exh. B-16].[2] Defendants promote the sale of infringing goods through retail signage [Landrum, Exh. B-18], as do

---

[2] The <renegadeclassics.com> website of Rowsey and Rowsey Investments directs users to the <sturgisfun.com> website: "For more information on Sturgis Rally go to www.SturgisFun.com." [See Landrum, Exh. B-17].

Plaintiff's licensees. This factor also favors Plaintiff.

**f)      Defendants adopted their infringing designations with the intent to misappropriate Plaintiff's goodwill.**

Defendants had both constructive and actual notice of Plaintiff's rights. Mortimer signed an application for a license specifically acknowledging Plaintiff's rights. [Exh. C to Complaint]. Plaintiff put Mortimer on actual notice of its rights through a cease-and-desist letter in 2011. [Exh. C-1]. And Mortimer previously has purchased licensed goods from Plaintiff's licensees [Kinney, ¶39], which product tags identify Plaintiff and its trademarks, only to stop recently in favor of selling infringing goods. [Exhs. E and F to Complaint]. Still further, Mortimer has embarked on a campaign to interfere with Plaintiff's customers, encouraging them not to enter agreements with Plaintiff and to infringe Plaintiff's rights. [Sneed, ¶5; Exh. H to Complaint]. Moreover, Mortimer has represented falsely to the PTO that he has a right to use the designation "STURGIS RALLY WEEK", a clear bid to trade on Plaintiff's goodwill. [Exhs. B-13 and B-14 to Landrum].

**g)      Defendants have sought intentionally to generate confusion in the marketplace.**

Defendants, particular Mortimer, actively have been attempting to confuse Plaintiff's licensees and customers, and potential licensees and customers, by communicating with them to discourage them from entering into and complying

22

with licenses, or from otherwise engaging in lawful business activities with

Plaintiff, and to encourage them to infringe Plaintiff's STURGIS Marks with

impunity. Whether Defendants succeed remains for discovery and trial. For

purposes of the instant motion, this factor weighs forcefully in Plaintiff's favor.[3]

**B.      Plaintiff Will Suffer Irreparable Injury Unless the Injunction Issues**

"[L]oss of control of reputation, loss of trade, and loss of goodwill" each

constitute irreparable injury warranting an injunction. *Overhead Door Corp. v.*

*Burger*, 2013 WL 3057796, *8 (M.D. Ga. June 17, 2013) ("Irreparable injury can

also be based upon the possibility of injury.") (quoting *Ferrellgas Partners, L.P. v.*

*Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (unpublished[4]). An injunction is

warranted where the "damage to [the plaintiff's reputation] and goodwill could not

be easily quantified nor could it be undone through an award of money damages."

*adidas AG v. adidascrazylight2.com*, 2013 WL 1651731 (S.D. Fla. Apr. 16, 2013)

(defendants' websites and sale of inferior goods likely to cause irreparable harm).

Because of Defendants' unlawful activities, Plaintiff loses the ability to

control its reputation for products sold outside the quality-control procedures

---

[3] Plaintiff also is entitled to an injunction on its state-law trademark, deceptive trade practice, and infringement claims: "The practice of applying the likelihood of confusion test to just one of the multiple causes of action that it satisfies and then extending that analysis to the remaining claims has been noted with approval in this Circuit." *Churchill Downs*, 2013 WL 5350830, *3 n.3) (citations omitted).

[4] But see, *e.g.*, *Coach, Inc. v. Becka*, 2012 WL 5398830, *7 n.8 (M.D. Ga. Nov. 2, 2012) (citing *Ferrellgas*, 143 F. App'x 180, as "persuasive authority" pursuant to 11th Cir. R. 36–2).

followed by Plaintiff's licensees. [Kinney, ¶43]. Indeed, Mortimer admits to selling cheap t-shirts. [Exh. G to Complaint (advertising t-shirts for $5.95)]. Also, as Plaintiff and its licensees are the sole lawful source of merchandise bearing the STURGIS Marks, each sale of a t-shirt by Defendants deprives Plaintiff of sales revenue. And, Defendants' sale of infringing goods detracts from Plaintiff's goodwill in its STURGIS marks.

## C.    The Injury to Plaintiff Outweighs Any Potential Damage to Defendants

Plaintiff depends on the sale, primarily through its licensees, of STURGIS-branded merchandise to support Plaintiff's mission of economic development and charitable contributions. Defendants sell the infringing goods merely as one of many product lines. At Defendants' Buford store, the infringing goods are sold along with a variety of other goods targeted to motorcycle enthusiasts. Moreover, Defendants' Buford store has been in business only for a few months and Mortimer recently recommended the sale of infringing goods. See, *e.g.*, *Ferrellgas Partners*, 143 F. App'x at 191 (defendant's two years in business "suggest[ed] that it has limited goodwill of its own"). Any potential damage to Defendants from an injunction regarding these goods is negligible. Accordingly, the harm to Plaintiff

24

outweighs any potential damage to Defendants.[5]

**D.      An Injunction Would Benefit the Public Interest**

"The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. *adidas*, 2013 WL 1651731, *8. In fact, "the public interest is **served** by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (emphasis added). An injunction is needed to prevent Defendants from misleading the public and to serve the public interest by preventing consumer confusion.

### III.     CONCLUSION

Plaintiff will succeed on its trademark, deceptive trade practices, and unfair competition claims because it owns valid marks which Defendants have infringed. Plaintiff will suffer irreparable harm from the confusion generated in the marketplace by Defendants' activities, while any inconvenience to Defendants by an injunction would be minimal. An injunction will benefit the public interest by preventing the public from being confused. Accordingly, Plaintiff respectfully requests that the Court grant Plaintiff's motion.

---

[5] Mortimer previously has been enjoined from infringing the intellectual property rights of others. *Twentieth Century Fox Film Corp. v. Renegade Classics, Kenton Mortimer, et al.*, 2:10-cv-08565-SVW-SS (C.D. Cal. Jul. 8, 2011) (providing $50,000 in liquidated damages for any future infringement of the "Sons of Anarchy" motorcycle-themed television show rights).

Pursuant to Local Rules 5.1C and 7.1D, the undersigned hereby certifies that the

foregoing brief has been prepared with 14-point Times New Roman font.

Dated: August 5, 2014

<div style="margin-left:40%">

**s/ Charles Landrum**

Attorney Bar Number: 312056
Attorney for Sturgis Motorcycle Rally, Inc.
SNEED PLLC, *of Counsel*
610 Jetton St., Suite 120-107
Davidson, NC 28036
Telephone: (844) 763-3347
Email: CLandrum@SneedLegal.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2014, I electronically filed the foregoing *Plaintiff's Brief in Support of Motion for Preliminary Injunction* with the Clerk of Court using the CM/ECF system. I further certify that the foregoing document will be served contemporaneously with the Complaint pursuant to Fed.R.Civ.P 4.

**s/ Charles Landrum**
Georgia Bar No. 312056
Attorney for Sturgis Motorcycle Rally, Inc.

SNEED PLLC, *of Counsel*
610 Jetton St., Suite 120-107
Davidson, NC 28036
Telephone: (844) 763-3347
Email: CLandrum@SneedLegal.com